FILED

MAY 1 3 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANK RAMIREZ,

               Petitioner,

    v.

LARRY SMALL,

               Respondent.

No. C 99-3250 MHP (pr)

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

**INTRODUCTION**

    Frank Ramirez, a California prisoner incarcerated at the Calipatria State Prison, filed this pro se action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition is now before the court for consideration of its timeliness and for a review on the merits. For the reasons discussed below, the timely filed petition will be denied on the merits.

**BACKGROUND**

    A confidential informant told police officer Greg Albin that drugs were being sold out of a residence at 558 Ella Drive in San Jose, California. The informant indicated that a heavy-set Mexican male named Frank sold methamphetamine from 558 Ella Drive to him, and that Frank drove a maroon vehicle.

    On April 5, 1994, officer Albin and another police officer went to the address to conduct surveillance. After waiting over an hour, Frank Ramirez (the petitioner here) drove up in a maroon vehicle. The officers detained Ramirez and informed him they had a tip he was selling drugs from the house. He denied selling and gave permission for a search of the

house and his car.  A 14-year old girl answered the door and, in response to police questions, showed them her mom and Frank's room, i.e., the master bedroom.  The police searched the bedroom and found evidence that Ramirez lived there, including male clothing and a checkbook with Ramirez's name and the Ella Drive address.  The police also found six baggies of methamphetamine, a scale and empty baggies in the bedroom.  The police found a .38 caliber gun between the mattress and box spring of the bed int he bedroom.

Following a jury trial Ramirez was convicted in 1995 in Santa Clara County Superior Court of possession of methamphetamine for sale while armed with a firearm and possession of a gun by a convicted felon.  See Cal. Health & Safety Code § 11378; Cal. Penal Code §§ 12022(c), 12021(a).  He also was found to have suffered two prior serious felony convictions and to have served four prior prison terms.  See Cal. Penal Code §§ 667, 667.5.  Ramirez was sentenced to 29 years to life in prison in 1996.  His conviction was affirmed by the California Court of Appeal and his petition for review was denied by the Supreme Court of California in 1998.  His state habeas petitions were unsuccessful.

Ramirez filed a federal habeas petition in 1998.  That petition was dismissed because state judicial remedies had not been exhausted as to the claims raised therein.  See Ramirez v. Small, No. C98-4149 MHP.  Several months later, Ramirez commenced this action by filing a new habeas petition.  The court issued an Order To Show Cause, respondent filed an answer to the petition, and petitioner filed a traverse.  The matter is now ready for a consideration of the timeliness and merits of the petition.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged conviction occurred in Santa Clara County, California, which is located within this judicial district.  28 U.S.C. 2241(d).

### STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

### EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every

1 claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not

2 dispute that state court remedies were exhausted for the claims in the petition.

**DISCUSSION**

4 A.    Timeliness Of The Petition

5       Respondent urges as a threshold matter that Ramirez's petition was not timely filed.

6 He argues that Ramirez's state habeas petitions did not toll the limitations period because

7 they did not raise a federal constitutional issue, they raised claims different from those raised

8 in the current federal petition, and they were not "properly filed" applications within the

9 meaning of the statute. For the reasons discussed below, the court rejects respondent's

10 argument, based largely on cases decided after respondent's answer was filed.

11       Petitions filed by prisoners challenging non-capital state convictions or sentences

12 generally must be filed within one year from "the date on which the judgment became final

13 by the conclusion of direct review or the expiration of the time for seeking such review." 28

14 U.S.C. § 2244(d)(1)(A). "Direct review" includes the 90-day period within which a

15 petitioner can file a petition for a writ of certiorari from the United States Supreme Court,

16 whether or not the petitioner actually files such a petition. Bowen v. Roe, 188 F.3d 1157,

17 1159 (9th Cir. 1999). Ramirez's petition for review in the California Supreme Court was

18 denied on February 18, 1998. Giving him the benefit of the 90-day period for seeking

19 certiorari in the U.S. Supreme Court, the one-year limitations period began on May 19, 1998

20 and his federal habeas petition presumptively had to be filed no later than May 19, 1999.

21 The federal petition was not filed until July 1, 1999.

22       As respondent acknowledges, the key question here is whether the limitations period

23 was tolled during the pendency of any of Ramirez's state habeas petitions, the first of which

24 was filed in October 1998 and the last of which was denied on May 26, 1999. The one-year

25 statute of limitations is tolled under § 2244(d)(2) for the "time during which a properly filed

26 application for State post-conviction or other collateral review with respect to the pertinent

27 judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Because the statute expressly

28 provides that the properly filed application be "with respect to the pertinent judgment or

United States District Court

For the Northern District of California

4

United States District Court

For the Northern District of California

1   claim," the period of limitation is tolled during the pendency of a state application

2   challenging the pertinent judgment, even if the application does not include a claim later

3   asserted in the federal habeas petition. Tillema v. Long, 253 F.3d 494, 502 (9th Cir. 2001)

4   (limitation period tolled for three-year period during which state prisoner's "Motion to Vacate

5   Illegal Sentence" was pending before Nevada court, even though claims in that motion were

6   not subsequently raised in federal habeas corpus petition); see also Smith v. Duncan, 274

7   F.3d 1245, 1249 (9th Cir. 2001) (limitation period tolled during pendency of state habeas

8   petition attacking prior conviction used to enhance current conviction).  Thus, the fact that

9   Ramirez's state habeas petitions raised a state law claim rather than federal law claims and

10  the fact that they did not raise the same claims raised in his federal petition do not matter: he

11  is entitled to statutory tolling for the pendency of the state habeas petitions because those

12  petitions (claiming there had been an error under state law in the sentencing) were made with

13  respect to the same judgment under attack today.  Indeed, the Tillema opinion used a similar

14  scenario as an example of a case in which statutory tolling should apply, noting the benefit of

15  waiting to file a federal petition until the state court ruled on the state claim because that

16  ruling might make a federal petition unnecessary.  See Tillema, 253 F.3d at 501.

17       Ramirez's state petitions were "properly filed," despite their denial as procedurally

18  barred in state court.  An application is "filed," as that term is commonly understood, when it

19  is delivered to, and accepted by, the appropriate court officer for placement into the official

20  record.  Artuz v. Bennett, 531 U.S. 4, 8 (2000).  And it is "properly filed" under

21  § 2244(d)(2), when its delivery and acceptance are in compliance with the applicable laws

22  and rules governing filings.  Id.  The question whether an application has been "properly

23  filed" is quite separate from the question whether the claims contained in the application are

24  meritorious and free of procedural bar.  Id. at 9.  Accordingly, that Ramirez's application for

25  state post-conviction relief may have contained procedurally barred claims did not render the

26  application improperly filed for purposes of tolling the one-year limitation period under §

27  2244(d)(2).  See id.; see, e.g., Smith, 274 F.3d at 1247-48 (California's In re Swain and In re

28  Waltreus bars not a condition to filing; consequently, petitions rejected under these bars are

5

United States District Court

For the Northern District of California

1    properly filed as long as they were properly delivered and accepted).

2        Ramirez's one-year limitations period began on May 19, 1998.  The limitations period

3    was tolled for 238 days, from October 1, 1998 through May 26, 1999, during which his state

4    habeas petitions were pending.  See Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999),

5    cert. denied, 529 U.S. 1104 (2000) (allowing tolling between state petitions, as well as time

6    during which they were actually on file).  Consequently, his original deadline of May 19,

7    1999 was extended for 238 days to approximately January 12, 2000.  Ramirez's petition filed

8    in early July 1999 was filed about six months before the one-year limitations period ended in

9    January 2000 and therefore was timely filed.  (The court has used October 1, 1998 as the date

10   of the filing of the first state petition because respondent did not provide the actual date

11   during that month on which the petition actually was filed.  The hypothetical versus actual

12   date in October 1998 is irrelevant, however, because the petition would be timely regardless

13   of the particular day during that month on which the first state habeas petition was filed.)

14   B.    Legal Claims

15       1.    Admission of Character And Expert Evidence

16       Ramirez claims that evidence suggesting he was a "major drug dealer," Petition, p. 6,

17   with prior drug activity was improperly admitted in three ways.  First, he contends that the

18   prosecutor improperly stated during his opening statement that the police were at the Ella

19   Drive address pursuant to information received from an informant.  Second, the prosecutor

20   told the jury Ramirez was engaged in the sale and distribution of methamphetamine and was

21   equipped to make available to any customer specified quantities of the drug.  Third, he

22   contends that expert witness testimony about drug sales was improperly admitted.

23       a.    Prosecutor's Comments Regarding Apprehension of Ramirez

24       During his opening statement, the prosecutor explained how the police came to

25   apprehend Ramirez.  He stated that the two officers were in plain clothes and in an unmarked

26   police car conducting surveillance.

27       [O]n that date they went to the residence on Ella Drive for the purpose of
         investigating drug sales taking place from that house.  They were specifically
28       looking for a, a maroon automobile and perhaps a heavy set Mexican fellow

1    who used the name Frank, took up a position of surveillance nearby and after
     about an hour's period of time saw a maroon colored automobile drive into the
2    driveway of the house and stop.  [¶]  At the wheel driving the automobile was
     the defendant personally seated here in court today, Frank Ramirez.  Officer
3    Albin then went up to the driveway and, and contacted Mr. Ramirez and
     confronted him in accusatory fashion, although brief, what the police believed
4    what was taking place in the house.

5    AUG RT 3-4.  The prosecutor explained that the police then detained Ramirez and searched

6    the master bedroom of the house.

7          Defense counsel did not object during the prosecutor's opening statement.  After the

8    opening statement concluded, he explained outside the presence of the jury that the reference

9    to the police looking for a heavy-set man named Frank in a maroon car effectively

10   communicated to the jury that police had learned from an informant that Ramirez had

11   engaged in drug dealing activity in the past.  He opined that the prosecutor had violated the

12   agreement pursuant to his motion in limine that all the parties would say about the police

13   being at the Ella Drive address was that they were there conducting an investigation.

14   Defense counsel stated: "So, I am essentially asking the court to reiterate it's [sic] ruling in

15   limine to admonish the officers and the District Attorney not to get into the subject, but

16   merely limit it to we were doing an investigation at Ella -- at the Ella address."  July 17-18,

17   1995 RT 58-59.  The prosecutor stated that he did not think he was in violation of the in

18   limine ruling because he had not actually mentioned an informant or that police were at the

19   address pursuant to an informant's tip.  The prosecutor explained that he thought the

20   information was relevant to rebut the defense's anticipated position that the police were

21   acting improperly -- the evidence would show that the police did not randomly pick up

22   Martinez and conduct a search of the residence.  The trial court ruled that "any references to

23   why officer Albin is at the scene be limited to the fact that he's doing an investigation and

24   that connected with this house and in pursuant to that investigation went to the house,

25   approached an individual, approached someone who drove up to the -- to the house and we'll

26   work on it that way, okay."  July 17-18, 1995 RT 66-67.  The court directed the prosecution

27   to have his witnesses "just omit any reference to the fact that a subject of [officer Albin's]

28   investigation was a person, a heavy set guy named Frank who drove a maroon vehicle."  July

United States District Court
For the Northern District of California

17-18, 1995 RT 66.

The state appellate court rejected Ramirez's claims that there was an improper admission of evidence and that the prosecutor had engaged in misconduct. The evidence claim was rejected because defendant conceded that no such evidence was presented at trial, and the only mention of the topic of the informant occurred during the prosecutor's opening statement. The state appellate court also rejected Ramirez's prosecutorial misconduct claim. Defense counsel had not clearly objected to the argument, and simply had asked the court to reiterate the in limine ruling. The Court of Appeal explained that, under state law, a defendant could not complain on appeal of prosecutorial misconduct unless he made a timely assignment of misconduct and requested that the jury be admonished; if a timely objection and admonishment would not have cured the harm, the court could consider whether on the whole record the harm resulted in a miscarriage of justice. The appellate court "agree[d] with defendant's trial counsel that an admonishment would have aggravated the harm by emphasizing the information revealed by the prosecutor's opening statement." Cal. Ct. App. opinion, p. 23. The court determined that no miscarriage of justice resulted from the opening statement. "[T]he nature of the misconduct in this case was insignificant because it occurred in the opening statement and was about improper evidence that was ultimately not introduced." Cal. Ct. App. opinion, p. 24. Additionally, the prosecutor had explained to the jury before opening statement and closing argument that his comments were not evidence and the jury was so instructed. The appellate court also rejected Ramirez's argument that the prosecutor's comment violated his Sixth Amendment rights to confront and cross-examine witnesses because there was no hearsay evidence admitted against him. See id. at 23-24 n. 3.

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden,

1  477 U.S. at 181 (citation omitted); Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.), cert.

2  denied, 516 U.S. 1017 (1995).

3      The prosecutor's statement in Ramirez's case was an isolated error.  Ramirez has not

4  shown it was part of a pattern or even one of a few errors by the prosecutor.  The

5  misstatement also was not a direct misstatement:  the jury was not told that there was an

6  informant or that the police were there pursuant to an informant's tip.  Rather, the jury would

7  have had to infer from the statement that police were looking for "a maroon automobile and

8  perhaps a heavy set Mexican fellow who used the name Frank" and had questioned Ramirez

9  in an accusatory manner, AUG RT 3, that an informant told the police that Ramirez was

10  involved in drug sales.  The prosecutor's limited comment, in light of the jury instruction and

11  prosecutor's comments that his statements were not evidence, was not so egregious as to

12  render Ramirez's trial fundamentally unfair.   The improper statement was insignificant,

13  occurred in the opening statement, and was never followed up with any evidentiary

14  presentation.  The jury's decision was not affected by the statement.

15      The habeas court may consider whether the trial court issued a curative instruction in

16  determining the prejudicial effects of misconduct, as the court presumes that the jury has

17  disregarded inadmissible evidence and that no due process violation occurred.  See Greer v.

18  Miller, 483 U.S. 756, 766 n.8 (1987).  This presumption may be overcome if there is an

19  "overwhelming probability" that the jury would be unable to disregard evidence and a strong

20  likelihood that the effect of the misconduct would be "devastating" to the defendant.  See id.

21  No specific curative instruction was given in Ramirez's case, but Ramirez cannot capitalize

22  on the absence of the instruction because he did not want one given.  Defense counsel, like

23  the state appellate court, recognized that an admonishment would have aggravated the

24  situation by reminding the jury of the information.  The jury was informed in general that the

25  prosecutor's statements were not evidence by the prosecutor himself as well as by the court's

26  jury instruction.  The absence of a specific curative instruction does not weigh in Ramirez's

27  favor because it would not have diminished the effect of the prosecutor's statement.  This is

28  not to say that the statement was incurably harmful, but rather that what little impact it might

United States District Court

For the Northern District of California

1  have had would not have been diminished by reminding the jury of it in an instruction to

2  ignore it.

3          This court has not deferred under 28 U.S.C. § 2254(d) to the state appellate court's

4  decision because that court decided whether there was a miscarriage of justice rather than

5  whether the statement rendered the trial fundamentally unfair, which is the standard for the

6  federal due process analysis.

7          Finally, to the extent Ramirez casts his claim about the prosecutor's misstatement as

8  one for the improper admission of evidence in violation of his rights under the Due Process

9  Clause or Confrontation Clause, his argument fails because the prosecutor's statement was

10  not evidence.  The erroneous factual premise of these arguments renders them legally

11  unpersuasive.

12                 b.     Prosecutor's Comments That Ramirez Engaged in Drug Sales

13          In his opening statement,  the prosecutor stated that he intended to prove that Ramirez

14  "was engaged in the sale and distribution of methamphetamine.  Mr. Sanchez [sic] was

15  equipped to carry out that plan with packaging material, specifically, small plastic baggies in

16  which he would make available to customers specified quantities of methamphetamine and

17  also a small scale which he was equipped to weigh out, to measure out the quantity such that

18  it could be dealt out in known quantities for set prices."  AUG RT 3.

19          The state court rejected Ramirez's claim that this comment by the prosecutor was

20  improper.  "We fail to understand this assignment.  The information charged defendant with

21  possession for sale."  Cal. Ct. App. opinion, p. 21.

22          Likewise, this court sees no impropriety in the statement by the prosecutor.  The

23  prosecutor's statement referred to the evidence that would prove the charge that Ramirez

24  possessed methamphetamine for sale.  Officer Albin later testified that he found in the master

25  bedroom of the house indicia that Ramirez resided there.  He also found in that bedroom six

26  baggies of methamphetamine which led him to believe it was methamphetamine for sale,

27  empty baggies that he believed were to be used to package drugs for sale, and a small scale

28  of the type used to weigh out drugs in the drug dealing trade.  The prosecutor's statement was

United States District Court

For the Northern District of California

1    a fair comment on the evidence in this case. The prosecutor did not state or imply that his

2    comment pertained to anything other than what was observed on the day Ramirez was

3    apprehended. Ramirez is not entitled to the writ on this claim because the comment was not

4    misconduct.

5              c.    Expert Testimony About Drug Sales

6              As noted above, expert testimony was admitted about drug dealers' behavior and how

7    the evidence in this case indicated that Ramirez was engaged in drug dealing. The trial court

8    instructed the jury about the uses of the expert's testimony. The court informed the jury that

9    Officer Albin was "qualified to render an opinion in the areas relating to the recognition of

10   controlled substances, what constitutes a usable amount, and whether or not a substance is

11   possessed for sale, and other matters relating to the sale of controlled substances. The weight

12   to be given to his opinion will be up to you. [¶] Basically, a jury is not required to accept an

13   expert's opinion, any expert opinion as conclusive. You give it the weight to which you think

14   it's entitled after you evaluate all the evidence including the qualifications of the expert and

15   the reasons he or she gives for their opinion if any." July 17-18, 1995 RT 76. The judge

16   instructed the jury similarly for Officer Muldrow, who also was determined to be qualified as

17   an expert. The court also instructed the jury about the use of expert testimony as part of the

18   general jury instructions.

19             Most state court evidentiary rulings are not subject to review in a federal habeas

20   proceeding because the writ is available only to correct violations of the Constitution or laws

21   or treaties of the United States. The admission of evidence is not subject to federal habeas

22   review unless a specific constitutional guarantee is violated or the error is of such magnitude

23   that the result is a denial of the fundamentally fair trial guaranteed by due process. See

24   Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th

25   Cir. 1991). Failure to comply with state rules of evidence is neither a necessary nor a

26   sufficient basis for granting federal habeas relief on due process grounds. See id. at 919.

27

28

There were permissible inferences that a jury could draw from the expert testimony about drug dealing. For example, the jury could conclude that Ramirez possessed the drugs for sale rather than for personal consumption based on evidence that in his room were found multiple baggies containing drugs, empty baggies, and a small scale -- all of which were consistent with possession of drugs for sale, according to the expert testimony. Cf. Windham v. Merkle, 163 F.3d 1092, 1103-04 (9th Cir. 1998) (gang expert testimony permissible in gang attack prosecution)   Drug dealing is not something so commonly understood that expert testimony is not helpful as a matter of law. Although Ramirez contends that the expert witnesses testified about his character, they in fact testified to the methods and habits of drug dealers generally, and did not provide character evidence. Ramirez points to no expert testimony about his prior drug activity. The expert opinion testimony was properly introduced to assist the jury in evaluating the prosecution's theory of the case. This evidence did not so infect the entire trial as to render the conviction a denial of due process.

    2.    <u>Jury Instructions</u>

        a.    <u>Background</u>

Ramirez next contends that the jury was improperly instructed on the arming enhancement. Evidence was presented at trial that the police found six baggies of methamphetamine on a dresser in the master bedroom and that they found a loaded .38 caliber gun between the mattress and box spring of the bed in that room. The defense presented evidence that Elisa Sanchez, who resided in the home, purchased the gun for protection against her abusive ex-husband. With Ramirez's consent, the jury was instructed with this modified version of the pattern instruction CALJIC 17.16.1: "If you find the defendant guilty of the crime thus charged, you must determine whether or not such defendant was personally armed with a firearm at the time of the commission of the crime. [¶] The term 'armed with a firearm' means knowingly to carry a firearm or to have it available for use as a means of offense or defense." RT 516-517.

United States District Court
For the Northern District of California

1    Ramirez argued on appeal that the trial court had a duty sua sponte to modify the

2    instruction to specify that there had to be a connection -- a "facilitative nexus" -- between the

3    gun and the possession of drugs.  He also argued in the alternative that, if a defense request

4    for such an instruction was necessary, he received ineffective assistance of counsel in that

5    counsel failed to seek such an instruction.  The state appellate court disagreed with both

6    assertions.  The appellate court stated that the trial court had no sua sponte duty to instruct

7    under state law:

8        In this type of case, "[e]vidence that a firearm is kept in close proximity to
         illegal drugs satisfies th[e] 'facilitative nexus' requirement:  a firearm's presence
9        near a drug cache gives rise to the inference that the person in possession of the
         drugs kept the weapon close at hand for 'ready access' to aid in the drug
10       offense."  (People v. Bland, supra, 10 Cal. 4th at p. 1002.)

11           Thus, when defendant sought to show that Sanchez purchased the gun
         for non-drug dealing purposes, he was rebutting the prosecution's proof.  The
12       proposed modification to CALJIC No. 17.16.1 is simply an instruction
         conforming to defendant's evidentiary theory.  As such, it is a pinpoint
13       instruction that the trial court had no duty to give absent a request.

14   Cal. Ct. App. opinion, pp. 26-27 (brackets in original).  The appellate court also rejected the

15   argument that defense counsel had been ineffective, finding no deficient performance.

16   Ramirez's argument that further instruction was necessary was based on Bland, but Bland

17   was not issued until after the jury was instructed in Ramirez's case.  "Defendant's trial

18   counsel cannot be charged with anticipating the Supreme Court's interpretation of the arming

19   enhancement statute."  Cal. Ct. App. opinion, p. 27.

20           b.    Analysis

21       Defense counsel's failure to request a jury instruction embodying the various

22   principles announced in Bland was not ineffective assistance of counsel because the Bland

23   decision did not even exist at the time the jury instructions were given in Ramirez's case.

24   See People v. Bland, 10 Cal. 4th 991 (Cal. 1995).  Ramirez has not shown that the Bland

25   decision was so predictable or so in accord with then-existing law in California that counsel's

26   failure to argue for inclusion in the jury instruction the points later announced in Bland fell

27   below an objective standard of reasonableness -- a necessary requirement to show the

28   deficient performance to establish ineffective assistance in violation of his Sixth Amendment

13

United States District Court

For the Northern District of California

1  right to counsel.  See Strickland v. Washington, 466 U.S. 668, 688 (1984).  Thus, Ramirez

2  has not shown that counsel was ineffective with respect to the jury instructions at his trial.

3          The other part of Ramirez's claim concerns whether any federal constitutional right

4  was violated by the trial court's failure to instruct the jury on the nuances of the arming

5  enhancement as discussed in Bland.  The habeas analysis begins with a recognition that a

6  challenge to a jury instruction solely as an error under state law does not state a claim

7  cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-

8  72 (1991); see, e.g., Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1987) (failure to define

9  recklessness at most error of state law where recklessness relevant to negate duress defense

10 and government not required to bear burden of proof of duress), cert. denied, 488 U.S. 926

11 (1988).  To obtain federal collateral relief for errors in the jury charge, the petitioner must

12 show that the ailing instruction by itself so infected the entire trial that the resulting

13 conviction violates due process.  See Estelle v. McGuire, 502 U.S. at 72.  The instruction

14 may not be judged in artificial isolation, but must be considered in the context of the

15 instructions as a whole and the trial record.  See id.

16         Ramirez suggests that the instruction was not merely incomplete, but also was legally

17 wrong.  He argues that "[w]ithout the requirement that the prosecution prove the gun was for

18 the purpose of facilitating the drug possession, or sale, the jury could have concluded that it

19 was for 'defensive' purposes if it believed appellant shared Ms. Sanchez's intention to protect

20 members of the household from the ex-husband.  This would not meet the requirements as

21 defined by the Bland court."  Petition, p. 33.  The court declines to accept Ramirez's far-

22 fetched interpretation of the instruction.  The instruction that the term "armed with a firearm"

23 meant "knowingly to carry a firearm or to have it available for use as a means of offense or

24 defense" immediately followed the sentence that stated that the jury had to determine

25 whether the defendant was "personally armed with a firearm at the time of the commission of

26 the crime."  The juxtaposition of the two sentences clearly told the jury that the "offense or

27 defense" was with reference to the commission of the crime charged (i.e., the sale of drugs)

28 and was not a free-floating idea that could refer to an offense or defense relative to anything

in the world.  As is often the case, a sentence in an instruction read in isolation can be read in such a way as to mean something completely different and legally incorrect because the sentence does not include every exception and qualification to the idea therein.  But courts can and do look at the instruction in context and thus need not invalidate instructions that would be utterly incomprehensible if they included in each sentence the entire statement of the relevant law.  Viewed in context, the instruction was not infirm and is not reasonably susceptible to the interpretation given it by Ramirez.  More importantly, the California Court of Appeal held that the instruction adequately set forth the requirements for the enhancement under California law.  See Cal. Ct. App. opinion, pp. 25-27.  This court is not free to review the propriety of the California court's decision on a matter of state law.

Even if one assumed that Ramirez's claim raised a due process question, he would not prevail.  A habeas petitioner is not entitled to relief unless the record demonstrates that the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless they can establish that the error resulted in "actual prejudice."  See id.; see, e.g., Coleman v. Calderon, 210 F.3d 1047, 1051 (9th Cir. 2000) (finding Brecht error where "at the very least" the court could not "'say with fair assurance . . . that the judgment was not substantially swayed by the [instructional] error.'") (citation omitted).  In light of Ramirez's vigorous denial of any connection between him and the drugs and between him and the gun, there is no reasonable likelihood that the jury would have found him to be in knowing possession of both the drugs and gun which were found in the same bedroom, but would not have made the additional minimal inference that there was a facilitative nexus between the possession of the gun and the drugs.  There is no reasonable likelihood that the jury applied the instruction it actually received to return a finding that was contrary to California law and therefore there is no reasonable likelihood that the jury misapplied the instruction in a manner that violated the U.S. Constitution.  Any failure to give the additional

United States District Court

For the Northern District of California

1  instructions Ramirez now urges did not have a substantial and injurious effect or influence in

2  determining the jury's verdict.  Ramirez is not entitled to the writ on this claim.

3       3.    <u>Assistance of Trial Counsel</u>

4       Ramirez claims that his trial counsel provided ineffective assistance when he failed to

5  object to what Ramirez believes were incorrect statements of law in the prosecutor's closing

6  argument concerning possession of the gun and possession of drugs.  The California Court of

7  Appeal rejected Ramirez's claim, finding that there was no prejudice resulting from any

8  errors that may have occurred.

9       The Sixth Amendment to the U.S. Constitution guarantees not only assistance, but

10  effective assistance, of counsel.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).

11  The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of

12  ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the

13  adversarial process that the trial cannot be relied upon as having produced a just result."  <u>Id.</u>

14  To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that

15  (1) counsel's performance was "deficient," i.e., his "representation fell below an objective

16  standard of reasonableness" under prevailing professional norms, <u>id.</u> at 687-88, and (2)

17  prejudice flowed from counsel's performance, i.e., that there is a reasonable probability that,

18  but for counsel's errors, the result of the proceedings would have been different, <u>see</u> <u>id.</u> at

19  691-94.  The relevant inquiry under <u>Strickland</u> is not what defense counsel could have done,

20  but rather whether his choices were reasonable.  <u>See</u> <u>Babbitt v. Calderon</u>, 151 F.3d 1170,

21  1173 (9th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1159 (1999).

22       a.    <u>Argument Regarding Possession Of The Gun</u>

23       In his closing argument, the prosecutor gave several "options," or examples, to show

24  guilt or innocence on the gun possession charge.  For example, the prosecutor argued

25  "Option number 2.  If Elisa bought the gun at the direction of the defendant, then he is guilty

26  outright."  RT 413.  Ramirez takes issue with "option number 3" and argues that his counsel

27  was ineffective for failing to object to the following statement by the prosecutor:

28

United States District Court
For the Northern District of California

"Option number 3. If you find that Elisa bought the gun without any foreknowledge by the defendant, but that he ultimately shared it with her, he's guilty outright.

If you find that Elisa bought the gun and did not bring it to Mr. Ramirez's attention, didn't make any effort to let him know, but he on his own discovered the gun in the premises that they shared, they both had joint and constructive possession of, and that in that respect knowing that it was there, he relied on it saying she's got the gun to protect herself from her husband, that's okay. He comes in and wants to make sure either she or I can protect against him, but also some irate customer of mine that doesn't like the quality or quantity of my drugs wants to come or if somebody wants to come in and rip me off when the drugs are there, too, and I'm -- I'm a lucky drug dealer to have it there, then he's guilty then.

If Elisa bought the gun kept it in the room jointly shared by the two and told the defendant about it, its whereabouts even though Mr. Ramirez then never actually saw the weapon but had knowledge of it because of the communication and continued to reside in the room and rely on the items that were in the room, he's guilty.

If, in other words, Mr. Ramirez was completely unaware of the gun in the jointly and constructively possessed room, he's not guilty. He just simply did not have a clue that there was a gun there and unlike most other drug dealers, he didn't carry a weapon around his drugs as the experts say unpredictable a drug dealer is, then, ladies and gentlemen, he deserves an acquittal on that charge.

RT 413-414.

Ramirez argues that the middle two paragraphs provided two legally insufficient examples of guilt because "in either case the defendant knew about the gun and decided, if necessary, he would use it in case of an attack by the ex-husband or an attacking robber." Petition, p. 38. He contends it is not illegal for a felon to use a gun in self-defense. His proposed legitimate use for the gun misunderstands the prosecutor's argument. The prosecutor did not argue that Ramirez would be guilty if found in the act of self-defense. Although it may not be illegal for a felon to possess a gun temporarily for the limited duration required to respond to an imminent threat of harm, it is illegal for a felon to possess a gun in anticipation that such a situation may arise. See People v. Pepper, 41 Cal.App.4th 1029, 1038 (Cal. App. 1996). Under both scenarios argued by the prosecutor, Ramirez was in actual or constructive possession of the gun but was not faced with an imminent threat of harm. The prosecutor's argument was proper and did not merit an objection. The absence of an objection by defense counsel was not deficient performance by counsel. See Rupe v.

17

1  Wood, 93 F.3d 1434, 1445 (9th Cir. 1996), cert. denied, 519 U.S. 1142 (1997) (failure to take

2  a futile step is not deficient performance).

3       Ramirez also argues that the final paragraph quoted above indicated that Ramirez

4  could be found not guilty only if he was unaware of the gun.  The transcript does not support

5  his contention.  The prosecutor indicated that if Ramirez was completely unaware of the gun

6  he was not guilty, but did not state this was the only way in which Ramirez could be found

7  not guilty.  "'A court should not lightly infer that a prosecutor intends an ambiguous remark

8  to have its most damaging meaning or that a jury, sitting through lengthy exhortation will

9  draw that meaning from the plethora of less damaging interpretations.'"  Williams v. Borg,

10  139 F.3d 737, 744 (9th Cir.) (quoting Donnelly v. DeChristoforo, 616 U.S. 637, 647 (1974)),

11  cert. denied, 525 U.S. 937 (1998).  The prosecutor's argument was proper and did not merit

12  an objection.  The absence of an objection by defense counsel was not deficient performance

13  by counsel.  See Rupe v. Wood, 93 F.3d at 1445.

14       Not only does Ramirez not show deficient performance, he fails to show any prejudice

15  resulting from counsel's failure to object to these points in the prosecutor's argument.

16  Ramirez does not dispute that the court correctly instructed the jury on the law relevant to the

17  gun possession charge.  The state habeas court's rejection of Ramirez's ineffective assistance

18  of counsel claim for lack of a showing of prejudice was not contrary to or an unreasonable

19  application of clearly established federal law.  See 28 U.S.C. § 2254(d).  Ramirez is not

20  entitled to the writ on this claim.

21         b.     Closing Argument Regarding Liability For Drugs

22       In his closing argument, the prosecutor explained the concept of aiding and abetting as

23  applied to the drug charge.  The prosecutor gave an example of aiding and abetting liability:

24  "So there was an assault, the fellow that took the fist and punched the victim would certainly

25  be liable.  The person that stood by and made the statement and said "nice shot" is also

26  guilty." RT 376.  The prosecutor's example misstated the law of aiding and abetting liability,

27  as a simple bystander isn't liable for an assault committed by another.  But an objection

28  would not have been fruitful on this collateral matter.  Seasoned trial attorneys do not object

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   to every objectionable thing that occurs at trial; they often pick and choose, saving their

2   objections for only important points. Avoiding a disruption of opposing counsel's argument

3   may curry more favor with a jury than interrupting to point out a technical problem with a

4   hypothetical that isn't at all close to the facts relevant to the defendant's case. The argument

5   about a bystander's liability for another person punching someone was just the sort of

6   inaccuracy on which wise counsel would avoid wasting time. Although Ramirez and

7   appellate counsel have an abundance of time after trial to peruse the transcript in search of

8   errors, counsel during trial picks and chooses his objections in the fact-paced surroundings of

9   an ongoing trial. Trial counsel's non-objection to the assault hypothetical was not deficient

10  performance.

11        The prosecutor also argued in connection with aider and abettor liability: "If Mr.

12  Ramirez came in the night before and took out his drugs and Ms. Sanchez who has lived

13  there for years was present and observed that and said, fine, I don't think I like drugs, but I

14  like you and so I'll let you use my vanity to store your drugs, we have two guilty people."

15  RT 377. Ramirez argues that by viewing the converse of this scenario, the jury would

16  believe that it could convict Ramirez for merely being aware of drugs possessed by Ms.

17  Sanchez.

18        Ramirez's argument misinterprets the prosecutor's argument. The prosecutor's

19  scenario did not posit guilt based only on "mere awareness" of another's drug possession.

20  The prosecutor's scenario indicated that if a person knew that his or her friend possessed the

21  drugs for sale and allowed the seller to use his or her property to store the drugs, both parties

22  would be guilty. In that scenario, guilt is premised on knowledge and affirmative assistance.

23  Counsel's non-objection to this argument by the prosecutor was not deficient performance.

24        Ramirez also fails to show any prejudice resulting from counsel's failure to object to

25  these points in the prosecutor's argument. Ramirez does not dispute that the court correctly

26  instructed the jury on the law relevant to the drug charge and the law relevant to aiding and

27  abetting liability. The state court's rejection of Ramirez's ineffective assistance of counsel

28  claim for lack of a showing of prejudice was not contrary to or an unreasonable application

19

United States District Court

For the Northern District of California

1  of clearly established federal law.  See 28 U.S.C. § 2254(d).  Ramirez is not entitled to the

2  writ on this claim.

3        4.      Denial Of Request For An Out-Of-Court Recess

4        Ramirez claims that the trial court denied his constitutional rights when it refused his

5  request for a recess to discuss the possibility of him testifying.  The trial court held a hearing

6  on the issue in connection with Ramirez's motion for a new trial on the ground that he had

7  been denied the right to counsel.  After the hearing on the motion for new trial, the trial court

8  issued a written order describing the relevant facts:

> During the trial, counsel met with the court on numerous occasions to discuss
> the trial schedule.  These discussions were generally held off the record.
> Counsel for defendant, Michael Chastaine, repeatedly indicated that court and
> counsel could expect that defendant would not be testifying in the case.  [¶]
> Following the testimony of Isaac Benavides Mr. Chastaine informed the court
> that he had no further evidence to offer.  After admitting the defense exhibits
> the court called counsel to sidebar to discuss the schedule.  Mr. Chastaine said
> that before he formally rested the defense case he wanted to speak to the
> defendant to confirm the decision not to testify.  The court agreed to give Mr.
> Chastaine some time to talk with his client at counsel table.  [¶]  After some
> minutes Mr. Chastaine returned to sidebar and requested a recess to continue to
> discuss the matter with defendant.  He did not indicate that defendant was
> asking to testify, nor did he suggest that there had been anything about the trial
> testimony which necessitated any reconsideration of the earlier decision on this
> subject.  [¶]  The court declined to take a recess, again informing Mr. Chastaine
> that he could speak to defendant at counsel table.  After further discussion with
> defendant, Mr. Chastaine informed court and counsel that defendant would not
> be testifying.  The defense then rested its case and the People indicated that
> there was no rebuttal.  The jury was then asked to return the following morning
> for argument and instructions.  [¶]  After the jury had left, but before recessing
> for the day, the court granted the prosecution's motion to reopen the People's
> case for the purpose of introducing a stipulation.  The following day the
> prosecution reopened, presented the stipulation and rested.  Mr. Chastaine
> again indicated that no further evidence would be presented on behalf of the
> defendant.  [¶]  At the hearing on defendant's motion for a new trial, Mr.
> Chastaine stated that he had numerous conversations with the defendant prior
> to the trial.  Although the defendant expressed his desire to testify, he agreed to
> a strategy in which he would not testify.  It was understood, however, that this
> strategy would be revisited once all of the evidence had been received at trial.
> [¶]  In their discussion at counsel table defendant indicated to Mr. Chastaine
> that he wanted to testify.  Mr. Chastaine urged him not to testify, and to stick to
> the original plan.  The discussion ended when defendant affirmatively stated
> that he would follow Mr. Chastaine's advice on this matter.

26  CT 573-575; Cal. Ct. App. opinion, pp. 29-31.  The trial court denied the motion for new

27  trial.  The California Court of Appeal relied on the above-quoted facts in rejecting Ramirez's

28  appeal.  The California Court of Appeal found that the trial court had not abused its

1   discretion in failing to grant a recess to defendant so he could discuss the matter with

2   counsel. Ramirez had numerous conversations before trial about the advisability of testifying

3   and conversed with counsel on this subject at the time of the requested recess and always

4   agreed with defense counsel's advice not to testify. Id. at 32. And the trial court did not

5   know at the time it ruled that Ramirez disagreed with counsel's advice and wanted to testify.

6   Also the trial court didn't want to grant a recess which would end with the jury simply being

7   sent home. Id.

8          This court presumes correct the state court's factual determination. See 28 U.S.C. §

9   2245(e)(1). Although the court would not presume correct a factual determination that

10  Ramirez had rebutted by clear and convincing evidence, see id., Ramirez has not challenged

11  the facts found by the trial court. The court thus analyzes Ramirez's claim based on the facts

12  as determined by the state court and as recited above.

13              The matter of a continuance is traditionally within the discretion of the
            trial judge, and it is not every denial of a request for more time that violates due
14          process even if the party fails to offer evidence or is compelled to defend
            without counsel. . . . Contrariwise, a myopic insistence upon expeditiousness in
15          the face of a justifiable request for delay can render the right to defend with
            counsel an empty formality. . . . There are no mechanical tests for deciding
16          when a denial of a continuance is so arbitrary as to violate due process. The
            answer must be found in the circumstances present in every case, particularly
17          in the reasons presented to the judge at the time the request is denied.

18  Ungar v. Sarafite, 376 U.S. 575, 589 (1964) (citations omitted).

19         Under the circumstances present in Ramirez's case, no constitutional violation

20  occurred when the trial court refused to permit a recess to enable defense counsel and

21  defendant to discuss outside the courtroom whether he would testify. The most critical fact

22  is that Ramirez and his counsel failed to inform the court that they were at odds about

23  whether Ramirez should testify and that he wanted to testify. As far as the court knew, this

24  was a non-issue because defense counsel had repeatedly indicated to the court and prosecutor

25  during trial that Ramirez was not expected to testify. Defense counsel never informed the

26  court or prosecutor otherwise. Even after he discussed the matter with Ramirez, defense

27  counsel only requested a recess to further discuss the matter with Ramirez and did not inform

28  the court that Ramirez wanted to testify. It was incumbent on them to alert the court to their

United States District Court
For the Northern District of California

disagreement and specific need to resolve the issue privately rather than for the court to guess the nature of any disagreement and the reason for the requested recess. The trial court allowed Ramirez and defense counsel to discuss the testimony issue initially and, once it denied the request for a recess, allowed them to continue to discuss the issue at the defense table. When defense counsel thereafter informed the court that Ramirez would not be testifying, and Ramirez did not protest, the court could reasonably view that as a waiver of the constitutional right to testify. Although the ultimate decision whether to testify rested with Ramirez, he is presumed to assent to his attorney's tactical decision not to have him testify. See United States v. Joelson, 7 F.3d 174, 177 (9th Cir.), cert. denied, 510 U.S. 1019 (1993). Ramirez waived the right to testify by remaining silent in the face of his attorney's decision not to call him as a witness. See United States v. Pino-Noriega, 189 F.3d 1089, 1095-96 (9th Cir.), cert. denied, 528 U.S. 989 (1999) (defendant waived right to testify by waiting until after jury reached verdict to inform court that he wished to testify).

Even after the trial court denied the requested recess and the defense rested, neither Ramirez nor his counsel mentioned that Ramirez had wanted to testify. Defense counsel and Ramirez remained silent about Ramirez's alleged desire to testify when the trial court ruled that the prosecution could reopen its case the next day. The trial court might have been able to cure any alleged problem by letting the defense reopen its case to elicit Ramirez's testimony had the problem been mentioned to the court either the day the court ruled that the prosecution could reopen its case or the next day when the prosecution in fact reopened.

The defense table in a courtroom is not the most private of settings, but the sight of counsel and client whispering to each other is not at all uncommon in a courtroom. Ramirez has not shown that it was physically impossible to have a whispered confidential discussion at the defense table. Indeed, Ramirez and counsel did have such a discussion before the defense rested. The trial court should not be faulted for failing to guess that Ramirez wanted to have a discussion in which he was free to make facial expressions, gesture with his hand, and speak loudly to his attorney to make known his desire to testify.

1    Ramirez's silence was anticipated from the start of trial and had been the subject of

2    numerous discussions between defense counsel and Ramirez.  The question of whether he

3    would testify after the last defense witness testified was not a surprise issue.  Ramirez seems

4    to assume that a lot of discussion had to take place about the issue after all the other

5    witnesses testified, but he ignores the fact that he and counsel had been discussing the issue

6    before and throughout the trial.  Ramirez's suggestion that Benavides' testimony prompted a

7    completely new assessment of the situation is not persuasive.  Benavides' testimony took less

8    than three pages of transcript, see RT 341-343, and was not so complex that its impact

9    required a great amount of private consultation between defense counsel and Ramirez.

10   Benavides, a friend of Ramirez, testified simply that he did not know where Ramirez lived

11   but that he could reach Ramirez at the Ella Drive address on the weekends.  Ramirez's place

12   of residence mattered a great deal, but the testimony from Benavides was quite limited and

13   straightforward on that key issue.

14       Had the trial court entirely precluded Ramirez and his counsel from communicating

15   with each other, his claim would be better-received.  See Geders v. United States, 425 U.S.

16   80 (1976) (complete denial of consultation between defense counsel and defendant during

17   overnight recess while defendant was testifying violated his right to assistance of counsel).

18   But that is not the situation here.  The court did not insist on the expediency of the trial

19   proceedings at the expense of a justified request for a recess.  See Ungar, 376 U.S. at 589.

20   The trial court allowed Ramirez to consult with defense counsel at the defense table before

21   the defense rested.  The fact that the trial court did not allow Ramirez and defense counsel to

22   also have a private discussion outside the courtroom, especially in light of their failure to

23   inform the court why further discussion was needed, did not result in a violation Ramirez's

24   right to testify, right to assistance of counsel, or right to due process.  He is not entitled to the

25   writ on this claim.

26

27

28

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: 5/3/02

_____
Marilyn Hall Patel
United States District Judge

awb

United States District Court
for the
Northern District of California
May 14, 2002

* * CERTIFICATE OF SERVICE * *

Case Number:3:99-cv-03250

Ramirez

    vs

Small

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Northern District of California.

That on  May 14, 2002, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office.

Frank Ramirez Sr.                          AB/MHP
CSP-Calipatria
CA State Prison-Calipatria                 PS Clerk
K-05214
7018 Blair Rd
P O Box 5002
Calipatria, CA  92233-5002

Raymond A. Cardozo, Esq.
CA State Attorney General's Office
455 Golden Gate Ave
Suite 11000
San Francisco, CA  94102-7004

Richard W. Wieking, Clerk

BY:
A Bowser, Deputy Clerk